# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **MELODIE L. MOSS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:14-cv-01442-WSD-AJB** |
| | : | |
| **CITY OF ATLANTA** | : | |
| **FIRE DEPARTMENT,** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

In this action, Plaintiff Melodie L. Moss raises claims against Defendant City of Atlanta Fire Department, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. 2000e, *et seq*., and the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101, *et seq*. [Doc. 2 at 1-2]. The matter is presently before the Court on Defendant's Motion for Summary Judgment. [Doc. 24]. For the reasons herein, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** the motion.

## I.     Background

Plaintiff proceeds *pro se* in this matter.  In her complaint, Plaintiff states that she worked as firefighter for the City of Atlanta Fire Department for fifteen years. [Doc. 2 at 7].  She alleges that in 2006, she fractured her foot in an on-the-job accident. [*Id.*].   She states that she had surgery and returned to work but suffered from a dislocation and tendinitis in her right foot.  [*Id.*].  She indicates that she requested a job assignment that would not require prolonged sitting with her foot in a low position and that although such assignments were available, the City denied her requests.  [*Id.* at 8]. Plaintiff states in the complaint that when the request was denied, she filed a complaint with the Equal Employment Opportunity Commission ("EEOC").[1]  [*Id.* at 7].

Plaintiff indicates that she then underwent a "fitness for duty" examination, and on September 6, 2011, was told to obtain a second "fitness for duty" examination. [*Id.* at 7, 15].  She states that thereafter, on October 11, 2011, she was fired, ostensibly for failure to schedule the second opinion within fourteen days, failure to apply for another position with the City of Atlanta "for which [she] could 'satisfactorily perform

---

[1]     Plaintiff indicates that she filed Charge Number 410-2010-04571 on August 25, 2010, and filed Charge Number 410-2011-03874 on May 31, 2011. [Doc. 2 at 10].  These charges are not presently in the record.

the duties of such position,' " and failure to complete the second "fitness for duty" exam within thirty days.  [*Id*. at 7, 15].

## II.    *Procedural History*

On March 13, 2012, Plaintiff filed a charge of discrimination alleging discriminatory termination.[2]  [*Id*. at 10].  In the charge, Plaintiff stated that Defendant had discriminated against her on the basis of her sex and disability and had retaliated against her for opposing unlawful employment practices in violation of Title VII and the ADA.  [*Id*.].  The particulars of the charge were as follows:

> I began working for the above employer as a Firefighter Recruit on December 10, 1998.  On August 25, 2010, I filed EEOC Charge Number 410-2010-04571 and on May 31, 2011, I filed EEOC Charge Number 410-2011-03874.  On October 12, 2011, I was discharged.

> My termination letter issued by Fire Chief, Kelvin J. Cochran states: "due to my inability to perform my duties as a firefighter and my failure to comply with the guidelines set forth by the City of Atlanta Code of Ordinances" as the reasons for my discharge.

> I believe I have been discriminated against because of my sex (female) and disability and retaliated against for opposing unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended and Title I of the Americans with Disabilities Act of 1990, as amended.

_____

[2]    The EEOC assigned the matter Charge Number 410-2012-02880. [Doc. 2 at 10].

[*Id*.].  After conciliation was unsuccessful, the EEOC issued Plaintiff a notice of right to sue on February 19, 2014.  [*Id*. at 11-12].

On May 13, 2014, Plaintiff initiated her suit in this Court.  [Doc. 1].  In the complaint, Plaintiff raises claims under Title VII and the ADA, alleging that Defendant discriminated against her on the basis of her race (African American), sex (female), and disability (mid-foot fracture), and retaliated against her for filing EEOC charges. [Doc. 2 at 6].  She asserts that as a result of the discrimination, she was required to work under terms and conditions of employment that differed from similarly situated employees, and she suffered retaliation, termination of her employment, and failure to accommodate her disability.  [*Id*.].  She alleges that other firefighters who have become disabled as a result of on-duty injuries were allowed to take a pension.  [*Id*. at 7].  She further contends that male firefighters were not required to obtain second opinions regarding their fitness for duty and were not terminated.  [*Id*.].  Plaintiff also alleges that after she filed charges with the EEOC, she was told that the Chief wanted to get rid of her, and she was terminated.  [*Id*.].

Plaintiff demands reinstatement to a position she can perform; no lapse of service; $250,000 in compensatory damages; all accrued salary from October 11, 2011,

4

through the present date; the costs and fees involved in litigating the case; and "[s]uch other relief as m[a]y be appropriate." [*Id*. at 8].

After close of discovery,[3] Defendant filed the motion for summary judgment that is presently pending before the Court. [Doc. 24]. Plaintiff filed a response on June 2, 2015, [Doc. 26]; Defendant filed a reply on June 16, 2015, [Doc. 27]; and on June 30, 2015, Plaintiff filed a surreply brief, [Doc. 28].[4] With briefing concluded, the Court turns to the merits of the motion.

---

[3]     Upon the parties' request, the Court had entered a scheduling order in which it enlarged discovery from the typical four-month discovery track to a period of five months. [Doc. 17 at 2]. The Court specified that the extended discovery period would close on April 16, 2015, and that further extensions of time would not be granted. [*Id*.]. On April 17, 2015, Defendant, with Plaintiff's consent, filed a motion to reopen and extend the discovery period. [Doc. 22]. Finding that the motion was not supported by a showing of good cause, the Court denied the motion and ordered that any dispositive motions be filed in compliance with the schedule set forth in the scheduling order. [Doc. 23].

[4]     "Although neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies, the Court may, in its discretion, permit the filing of a surreply when a valid reason exists, 'such as where movant makes new arguments in its reply brief.' " *Branch v. Ottinger*, Civil Action No. 2:10-CV-128-RWS, 2011 WL 4500094, at *1 (N.D. Ga. Sept. 27, 2011) (Story, J.) (quoting *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005) (Duffey, J.)). Here, in the interest of giving the *pro se* plaintiff the fullest opportunity to defend her claims in the face of Defendant's motion for summary judgment, the undersigned will consider Plaintiff's surreply.

5

### III.   Summary Judgment Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."  *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party may also meet its burden by pointing out that there is an absence of evidence to support an element of the case on which the nonmoving party bears the burden of proof.  *Celotex*, 477 U.S. at 325.  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial."  *Celotex*,

477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *See Anderson*, 477 U.S. at 252; *see also EPL Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999); *Duke v. Cleland*, 884 F. Supp. 511, 514 (N.D. Ga. 1995) (Freeman, J.). "If the record presents disputed issues of material fact, the Court may not decide them; rather, it must deny the motion and proceed to trial." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001)).

## IV.    Discussion

Defendant seeks summary judgment of all of Plaintiff's claims.  [Doc. 24].  The Court addresses the merits of the motion as to each claim in its logical order.

### A.    Legal Framework

#### 1.    Title VII Framework

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Title VII also makes it unlawful for an employer to retaliate against an employee for her participation in certain statutorily protected activities:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a); *see also Biniashvili v. Bohne*, 397 Fed. Appx. 597, 598-99 (11th Cir. Sept. 28, 2010).

8

To establish such a claim under Title VII, an individual may proffer direct or circumstantial evidence of discrimination. *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). When a party relies on circumstantial evidence to prove his or her case of discrimination, as Plaintiff does in the instant case, courts employ the familiar burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005); *see also Lawver v. Hillcrest Hospice, Inc.*, 300 Fed. Appx. 768, 772 (11th Cir. Nov. 24, 2008) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998)).

Under the *McDonnell Douglas* framework, a plaintiff first must establish a *prima facie* case of discrimination. *See, e.g.*, *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). If a plaintiff establishes a *prima facie* case, she has created an inference of discrimination, and the defendant has the burden of producing a legitimate, non-discriminatory reason for its employment action. *Id.* If the defendant meets this light burden, then the inference of discrimination is rebutted, and the inquiry "proceeds to a new level of specificity in which the plaintiff must show that

9

the proffered reason really is a pretext for unlawful discrimination." *Id.* (quoting *EEOC v. Joe's Stone Crab, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002)). To demonstrate pretext, the plaintiff must provide evidence that "reveal(s) 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.' " *Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)). Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 1999) (quoting *Burdine*, 450 U.S. at 253).

### 2.    *ADA Framework*

The ADA prohibits covered entities from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "[T]here are two distinct categories of disability discrimination claims under the ADA: (1) failure to accommodate and (2) disparate treatment." *E.E.O.C. v. Eckerd Corp.*,

10

Civil Action No. 1:10-cv-2816-JEC, 2012 WL 2726766, at *4 (N.D. Ga. July 9, 2012) (Carnes, J.).  Retaliation against a person claiming a right under the ADA or opposing a practice made unlawful by the ADA is also prohibited.  42 U.S.C. § 12203.  "The burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims."  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).

## B.     Title VII Claims for Race Discrimination

Because it presents the simplest issue, the Court first addresses Defendant's argument that Plaintiff cannot pursue a claim for racial discrimination because she did not exhaust her administrative remedies prior to bringing suit.[5]  [Doc. 24 at 4-5 [citing Doc. 2 at 10]].  Plaintiff does not address the exhaustion issue in her response

---

[5]     Before filing a Title VII action, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC.  *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970) ("[T]he filing of a charge of discrimination with the EEOC is a condition precedent to the bringing of a civil action under Title VII.").  The purpose of this exhaustion requirement " 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.' "  *Gregory*, 355 F.3d at 1279 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983) (alteration in *Gregory*)).

11

AO 72A
(Rev.8/8
2)

brief, [*see* Doc. 26 at 4-5], but in her surreply brief, she states that "[r]ace was not indicated in the complaint," [Doc. 28 at 2].

Review of the complaint reveals that Plaintiff did, in fact, claim that she "was discriminated against because of . . . [her] race . . . , which is African American." [Doc. 2 at 6].  Nevertheless, "a party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) (Evans, J.).  Also, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (Carnes, J.).  Thus, because Plaintiff did not respond to Defendant's exhaustion argument, [Doc. 26 at 4-5], and because Plaintiff's surreply brief suggests that she did not intend to bring a race-discrimination claim, [Doc. 28 at 2], the undersigned finds the claim abandoned.[6]

---

[6]     Additionally, the undersigned's review of Plaintiff's charge of discrimination reveals that Plaintiff did not allege claims of race-based discrimination before the EEOC.  [*See* Doc. 2 at 10].  Consequently, the motion to dismiss Plaintiff's racial-discrimination claims is also due to be granted based on Plaintiff's failure to exhaust her administrative remedies prior to filing suit. *See Gregory*, 355 F.3d at 1279-80 (stating that Title VII prohibits a plaintiff from alleging new acts of discrimination in the judicial complaint that were not raised in the EEOC charge and that the "proper inquiry" is whether the "complaint was like or related to, or grew out of, the allegations contained in her EEOC charge"); *Scott v. Shoe Show, Inc.*, 38 F. Supp. 3d 1343, 1358

AO 72A
(Rev.8/8
2)

Consequently, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion for summary judgment on Plaintiff's Title VII claims for race-based discrimination.

## C.     *Title VII Claims for Sex-Based Disparate Treatment*

Defendant also seeks summary judgment on Plaintiff's claims of sex-based disparate treatment on the ground that she cannot show evidence to support each element of a *prima facie* case.  [Doc. 24 at 3-4].  To state a disparate-treatment claim under Title VII based on circumstantial evidence, a plaintiff must first establish her *prima facie* case by showing that "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her class more favorably; and (4) she was qualified to do the job." *Brown v. Jacobs Eng'g, Inc.*, 572 Fed. Appx. 750, 751-52 (11th Cir. July 17, 2014) (per curiam) (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)); *accord Burke-Fowler*, 447 F.3d at 1323.  Defendant challenges Plaintiff's ability to establish the third and fourth elements of her Title VII disparate-treatment claims, arguing that Plaintiff cannot produce evidence sufficient to allow a reasonable fact finder to

---

(N.D. Ga. 2014) (Thrash, J., *adopting* Vineyard, M.J.) (collecting cases in which courts rejected claims for forms of discrimination "totally unrelated" to the forms alleged in the EEOC charge).

13

conclude that Defendant treated similarly situated employees outside Plaintiff's protected class more favorably or that Plaintiff was qualified for the position of firefighter. [Doc. 24 at 3-4].

While Plaintiff's response is not entirely clear, she appears to allege that Shedrick Gardner, a male firefighter, was provided alternative employment after a disability, [Doc. 26 at 4 [citing *id*. at 18-20]; Doc. 26-1 at 1 [citing *id*. at 6-8]]; there were office-assistant jobs that Plaintiff was capable of performing, but she was not offered the opportunity and the jobs were given to others, [Doc. 26 at 4 [citing *id*. at 21-24]; Doc. 26-1 at 2 [citing *id*. at 9-18]]; and proof of certain state certifications show that Plaintiff was qualified to work as a firefighter, [Doc. 26 at 4 [citing *id*. at 25-32]; Doc. 26-1 at 2 [citing *id*. at 9-18]]. She also states that Defendant "has a pattern or history of allowing injured male employees to remain in employment despite disabling injuries, while terminating female employee[s] with similar disabilities. [Doc. 26-1 at 3 [citing *id*. at 4-8]].

In reply, Defendant argues that the documents Plaintiff proffered regarding Mr. Gardner's alternative employment do not show that his situation was so similar to Plaintiff's that he may serve as a valid comparator. [Doc. 27 at 1-2 [citing Doc. 26 at 4, 13-14, 18-20]]. In particular, it contends that there is "no indication that Mr. Gardner

14

sought to dispute the finding that he was not fit for duty, nor is there indication of any issues with his cooperation with the City's fitness for duty evaluation process as there were with the Plaintiff."  [Doc. 27 at 1-2 [citing Doc. 26 at 4, 13-14, 18-20]].

In her surreply, Plaintiff asserts that her situation was "nearly identical" to Mr. Gardner's and that "he constitutes an excellent comparator."  [Doc. 28 at 1].  She goes on to aver that, in particular, she and Mr. Gardner were both employed by Defendant "during a similar time period," both incurred a debilitating injury while on duty, both failed a required physical fitness-for-duty test, and neither disputed the findings of the physical-fitness test, yet while Mr. Gardner was transferred to a fire-inspector position and was allowed to remain a sworn firefighter following his injury, when Plaintiff asked for the same accommodation afforded to Mr. Gardner, she was denied.  [*Id*. at 1-2].

After careful review of Plaintiff's proffer, the undersigned concludes that Defendant is also entitled to summary judgment on Plaintiff's claims of sex-based disparate treatment.  As Defendant points out, Plaintiff has failed to show that she was qualified for a position.  Plaintiff does proffer documents indicating that in 2000, she was certified to work as a firefighter; in 2010, she attended required continuing-education classes; and that she is licensed as an Emergency Medical

15

Technician through 2016. [Doc. 26 at 25-32]. As to her physical capabilities, however, she shows only that in 2011 and 2012, physicians opined that she had trouble standing and walking and therefore was unable to return to her work as a firefighter or otherwise perform field duty. [Doc. 26 at 10-12].

Similarly, while Plaintiff indicates that she had been transferred to an office assistant position and thus may have established a presumption that she was capable of performing in that capacity, [Doc. 26 at 21], she also indicates that she required a position "not requiring prolonged sitting with foot in low position," [Doc. 2 at 7], thus indicating that she was not only incapable of working in the field but was also unable to work at a desk job. Consequently, the undersigned finds that Plaintiff has failed to overcome Defendant's argument that she cannot show evidence that would allow a reasonable finder of fact to determine that she was qualified to work either as a firefighter or as an office assistant.

Plaintiff also fails to show evidence indicating that Defendant discriminated against her because she is female. First, although Plaintiff broadly asserts that Defendant displayed a "pattern" of allowing injured male employees to remain in employment despite disabling injuries, she points only to a single employment decision made with regard to a single employee: Mr. Gardner's reassignment from a "rescue"

16

position to an "inspector" position.  [Doc. 26-1 at 3-8].  Thus, it appears that Plaintiff's sex-discrimination claim arises not from a pattern or practice of sex discrimination but instead relies exclusively upon Plaintiff's allegation that she and Mr. Gardner were similarly situated but he was treated more favorably than she.

However, Plaintiff has failed to show that Mr. Gardner was a similarly situated comparator whose treatment might give rise to an inference that Plaintiff suffered gender discrimination.  In determining whether employees are similarly situated, the Eleventh Circuit has held that employees "must be 'similarly situated in all relevant respects.' " *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1204 (11th Cir. 2007) (emphasis omitted) (quoting *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)); *see also Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261 n.5 (11th Cir. 2001) (recognizing that "differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination").  "The burden of identifying similarly situated individuals is a heavy one." *Hicks v. Jackson Cnty. Comm'n*, 374 F. Supp. 2d 1084, 1096 (N.D. Ala. 2005), *quoted in Griffin*, 496 F.3d at 1205.  If the plaintiff fails to show the existence of a similarly situated employee and there is no other plausible allegation of discrimination, judgment as a matter of law is appropriate. *Arafat v. Sch. Bd. of Broward Cnty.*, 549 Fed. Appx. 872,

17

874 (11th Cir. Dec. 4, 2013) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam)).

Plaintiff has alleged in her unsworn briefs that she and Mr. Gardner were both employed by Defendant "during a similar time period," both incurred a debilitating injury while on duty, both failed a required physical fitness-for-duty test, neither disputed the findings of the physical-fitness test, and both requested the same accommodations, but while Mr. Gardner was permitted to stay on in an alternative position, Plaintiff was terminated from her alternative position and was replaced approximately a week later.  [Doc. 26 at 21-22; Doc. 28 at 1-2].  However, even presuming that Plaintiff's factual assertions are true and that she had personal knowledge sufficient to allow her to testify as to Mr. Gardner's situation as well as her own or that she could otherwise support the allegations with admissible evidence, Plaintiff glosses over key differences between her situation and Mr. Gardner's.

The documents Plaintiff proffers in response to Defendant's motion for summary judgment indicate that after Mr. Gardner was injured in 2007, he received an evaluation in 2007 that found him incapable of performing as a firefighter but capable of working as a fire inspector, and he was reassigned from a firefighter position to an inspector position the next month.  [Doc. 26-1 at 6-8].  Plaintiff, in contrast, proffers no evidence

18

that she was fit for any sort of duty: her medical documentation indicates that in 2011 and 2012 she remained restricted in her ability to stand and walk and was therefore incapable of working as a firefighter, but does not suggest that she was qualified to perform any alternative work, [Doc. 26 at 10-12], and Plaintiff contends that she was also incapable of performing a position "requiring prolonged sitting with foot in low position," which logically precludes the office-assistant positions as well, [*see* Doc. 2 at 7]. Additionally, it appears that the employment decisions Plaintiff seeks to compare took place years apart: according to Plaintiff's allegations, Mr. Gardner's injury and reassignment all took place in 2007, [Doc. 26-1 at 6-8], but Plaintiff's injury took place in 2006, [Doc. 2 at 7], sometime later, she was reassigned to an office-assistant position, [Doc. 26-1 at 9], and she was ultimately terminated in October 2011, [Doc. 2 at 10]. Moreover, there is no indication anywhere in the filings that Plaintiff and Mr. Gardner suffered from similar injuries, possessed similar experience and skills, or shared a supervisor, or that the same decision maker made the decisions both to transfer Mr. Gardner and to terminate Plaintiff. Nor—given the fact that Mr. Gardner's transfer and Plaintiff's termination occurred approximately four years apart—is there any reason to believe that Plaintiff and Mr. Gardner were similarly situated in all relevant respects and therefore are proper comparators. Consequently, the undersigned

AO 72A
(Rev.8/8
2)

finds that the evidence is insufficient to allow a reasonable fact finder to determine that Defendant's more favorable treatment of Mr. Gardner is circumstantial evidence suggesting that Defendant discriminated against Plaintiff based on her gender.[7]

For these reasons, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion for summary judgment on Plaintiff's claims of sex-based disparate treatment.

### D.     *ADA Discrimination Claims*

Defendant also seeks summary judgment on Plaintiff's claims that it discriminated against her in violation of the ADA on the grounds that she cannot show evidence to support each element of a *prima facie* case of disability discrimination. [Doc. 24 at 5-6]. "In order to establish a prima facie case of discrimination under the ADA, the plaintiff must show that: (1) [s]he is disabled; (2) [s]he was a 'qualified individual' at the relevant time, meaning that [s]he could perform the essential functions of the job in question with or without reasonable accommodations; and

---

[7]     Although Plaintiff does not appear to raise a discriminatory hiring claim, the Court also notes that according to the documents Plaintiff has proffered, the office-assistant jobs Plaintiff appears to claim she should have been awarded were given to other women.  [Doc. 26 at 4, 21-24; Doc. 26-1 at 2, 9-12].  Thus, it cannot be said that those employees were individuals outside Plaintiff's protected gender class who were treated more favorably than Plaintiff.

AO 72A
(Rev.8/8
2)

(3) [s]he was discriminated against because of h[er] disability." *Lucas v. W.W. Grainger, Inc*., 257 F.3d 1249, 1255 (11th Cir. 2001).  The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1); *see also Chapman v. U.S. Postal Serv*., 442 Fed. Appx. 480, 484 (11th Cir. Oct. 4, 2011).  In determining whether an impairment substantially limits a major life activity, the Court takes guidance from "the regulations promulgated by the [EEOC], which state that major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (citing 29 C.F.R. § 1630.2(i)) (punctuation omitted).  "The ADA defines a 'qualified individual' as an individual with a disability 'who, with or without reasonable accommodation, can perform the essential functions' of her job."  *Morales v. Ga. Dep't. of Human Res*., 446 Fed. Appx. 179, 182 (11th Cir. Nov. 2, 2011) (per curiam) (quoting 42 U.S.C. § 12111(8)).

Again, Plaintiff's response is not entirely clear.  [*See* Doc. 26 at 6 (arguing only that evidence shows that "Defendant failed to engage in a good faith interaction process to accommodate after reviewing medical records which show the plaintiff has a

21

disability" and that a physician opined that Plaintiff needed surgery)].  Nevertheless, the Court finds based on Plaintiff's response that she is likely to be able to proffer admissible evidence in support of the first element of a *prima facie* case:  documents she has proffered to the Court show that a physician opined that Plaintiff "is on permanent restrictions of standing and walking to tolerance and no field duty" and is unable to undergo certain tests "due to the foot issue."  [Doc. 26 at 11].  Thus, it appears that Plaintiff could, at trial, proffer evidence sufficient to allow a reasonable finder of fact to conclude that she is disabled.

The Court finds, however, that Plaintiff has failed to proffer evidence sufficient to meet the second element of a *prima facie* case of disability discrimination: to enable a reasonable fact finder to determine that she was capable of working as a firefighter or an office assistant with or without accommodation.  While Plaintiff avers in an unsworn statement that she could have performed as a firefighter with the accommodation of "special light weight boots," the documents she cites in support of the statement say nothing about boots or any other accommodations, [Doc. 26-1 at 2, 12-18], and the medical evidence she proffers unequivocally states that in 2011 and 2012, her foot issues made Plaintiff incapable of performing field duty, [Doc. 26 at 10-12].  Moreover, while she avers in response to Defendant's motion for

22

summary judgment that she is capable of working as an office assistant, [Doc. 26-1 at 2, 9-12], she indicates in her complaint that she requested a job reassignment because she cannot work in a position that requires "prolonged sitting with foot in low position," [Doc. 2 at 7].  As a result, the undersigned finds that Plaintiff has failed to establish the existence of a genuine issue of material fact as to whether Plaintiff is capable of performing the essential functions of the job of firefighter or an office assistant, with or without accommodation.

The Court also finds that Plaintiff has failed to overcome Defendant's argument that she cannot show that Defendant discriminated against her because of her disability. The only proffer Plaintiff makes that could possibly be construed as evidence that Defendant discriminated against her because of her disability is a letter of determination issued by the EEOC on or about April 11, 2013.[8]  [Doc. 26 at 33-34].  In the letter, the EEOC indicated that it found a nexus between Plaintiff's previous protected activity and her subsequent discharge, specifying that Defendant's "failure to engage in the interactive process and attempt to reassign [Plaintiff] before terminating her

---

[8]    Notably, the exhibits Plaintiff highlights show that Defendant transferred Mr. Gardner to an alternative position when he was no longer physically capable of working in the field, which appears to imply that Defendant lacked intent to discriminate against disabled individuals.  [Doc. 26 at 6 [referencing Doc. 26 at 18-20]; Doc. 28 at 3 (same)].

AO 72A
(Rev.8/8
2)

employment is contrary to the provisions of the ADA" and that "[b]ased upon the evidence and the record as a whole, it is reasonable to conclude that [Plaintiff] was ultimately discharged in retaliation for filing EEOC charges of discrimination all in violation of Title VII and the ADA."  [*Id.*].

The Court finds the letter insufficient to raise a genuine issue of material fact as to whether Defendant discriminated against Plaintiff because of her disability.  An EEOC determination letter may be admissible evidence in a jury trial so long as it is not unduly prejudicial.  *See Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1554-55 (11th Cir. 1995) (affirming district court decision to exclude EEOC determination letter on grounds that its likelihood of confusing jury substantially outweighed its probative value).  However, a district court is "not required to defer or make reference to the EEOC determination" in its opinion deciding summary judgment and therefore is not required to find that the determination creates an issue of material fact.  *See Kincaid v. Bd. of Trs.*, 188 Fed. Appx. 810, 817 (11th Cir. June 27, 2006) (per curiam) (citing *Moore v. Devine*, 767 F.2d 1541, 1549-51 (11th Cir. 1985), *modified on reh'g*, 780 F.2d 1559, 1560 (11th Cir. 1986)).  It is the Court's, not the EEOC investigator's, duty to determine whether issues of material fact exist.  *Walker*, 53 F.3d at 1554-55; *Williams v. Ala. Indus. Dev. Training*, 146 F. Supp. 2d 1214, 1224 (M.D. Ala. 2001).

24

As a result, an EEOC determination "letter is suitable for framing but does not create an issue of fact." *Williams*, 146 F. Supp. 2d at 1224; *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir. 2000) ("Nor does the EEOC reasonable cause determination create a genuine issue of material fact."). The probative value of an EEOC determination depends on the other evidence in the case and the quality of the investigation and the conclusions therefrom. *See Williams*, 146 F. Supp. 2d at 1224 (finding EEOC determination letter of no probative value because it did not suggest what evidence was considered and it indicated that the EEOC was not fully apprised of plaintiff's work history); *see also Kincaid*, 188 Fed. Appx. at 817 (finding conclusory EEOC determination to be unhelpful); *Coleman*, 232 F.3d at 1283 (citing cases and holding that a conclusory EEOC determination letter provides little probative value); *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984) ("EEOC determinations are not homogenous products; they vary greatly in quality and factual detail.").

Here, the EEOC determination letter says nothing about disparate treatment, and while it does appear to find that Defendant failed to determine whether Plaintiff could be reasonably accommodated in lieu of termination, it does not recite what evidence it reviewed or relied upon to reach the conclusion. [*See* Doc. 26 at 33-34]. Because the

AO 72A
(Rev.8/8
2)

letter does not even expressly address the EEOC's determination as to Plaintiff's ADA disparate-treatment claims, clearly, the letter is of no value in determining whether the EEOC indeed found a disparate-treatment violation under the ADA or explaining the evidence the EEOC may have considered in reaching its determination.  Likewise, as the letter does not contain any detail regarding vacant positions and Plaintiff's capability to perform the duties of any of them with or without reasonable accommodation, the letter is also too conclusory to serve as evidence supporting any claim for failure to accommodate.

For these reasons, the undersigned finds that Plaintiff has not proffered evidence sufficient to enable a reasonable fact finder to determine that Plaintiff was a "qualified individual" or that Defendant terminated her employment because of her disability. Accordingly, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion as to the discrimination claims Plaintiff pursues under the ADA.

### E.      *Retaliation Claims*

Defendant also contends that Plaintiff cannot establish a *prima facie* case of discriminatory retaliation.  [*See* Doc. 24 at 6-7].  To establish a *prima facie* case for a retaliation claim, a plaintiff must show that: (1) she engaged in statutorily protected

26

activity; (2) she suffered a materially adverse action[9]; and (3) there was a causal link between the two. *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 856 (11th Cir. 2010); *see also Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000); *Holifield*, 115 F.3d at 1566. To satisfy the causation prong, the prong Defendant challenges here, Plaintiff is only required to show that the "protected activity and the adverse action were not wholly unrelated." *Shotz v. City of Plantation*, 344 F.3d 1161, 1180, n.30 (11th Cir. 2003) ("[A] plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected

_____

[9]     In *Crawford v. Carroll*, 529 F.3d 961, 973-74 (11th Cir. 2008), the Eleventh Circuit recognized that the Supreme Court's decision in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), broadened the type of employer conduct considered actionable in a retaliation claim, from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment- or workplace-related. *Crawford*, 529 F.3d at 973. Therefore, as a result of *Burlington Northern* and *Crawford*, the Court concludes that it is inappropriate to refer to this element as the adverse employment action element. *Burlington Northern* explicitly states that "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington Northern*, 548 U.S. at 67. The Court's decision merely requires the employee to show that a reasonable employee would have found the challenged action materially adverse, meaning the reasonable worker would be dissuaded from making or supporting a charge of discrimination. *Id.* at 68 (quotation marks and citations omitted). Thus, it is more appropriate to refer to the "adverse employment action" element as the "materially adverse action" element.

AO 72A
(Rev.8/8
2)

conduct, and that there was a close temporal proximity between this awareness and the adverse action.") (alteration and citation omitted).

Defendant argues that Plaintiff cannot succeed on the causation element because there is no direct evidence of a causal connection between Plaintiff's termination and the protected activity of filing an EEOC charge and because the temporal distance between the filing of her charge on May 31, 2011, and the termination of her employment on October 22, 2011, is too great to serve as circumstantial evidence of causation. [Doc. 24 at 6-7]. Plaintiff, in response, points to the determination letter the EEOC issued in response to Plaintiff's 2012 charge of discrimination, [Doc. 26 at 7], and argues that it, in combination with "[t]he chronology of events and the disparate actions taken towards the plaintiff when compared to other similarly situated employees[,] strongly indicate[s] that the Plaintiff was discriminated against on the basis of sex and retaliation." [Doc. 28 at 3].

The undersigned concludes that Defendant also has the better end of this argument. Because nearly five months passed between the time Plaintiff filed her last pre-termination EEOC charge on May 31, 2011, and her employment was terminated on October 22, 2011, Plaintiff cannot rely on proximity alone to establish a reasonable presumption of causation. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006)

AO 72A
(Rev.8/8
2)

(holding that, in the absence of any other evidence of causation, protected activity and adverse employment action occurring three months later were too temporally attenuated to create a jury issue on causation).  The EEOC determination letter is insufficient to serve as "other evidence of causation," because although it does state that "it is reasonable to conclude that [Plaintiff] was ultimately discharged in retaliation for filing EEOC charges of discrimination all in violation of Title VII and the ADA," it explains only that it bases the determination on its finding that Defendant failed to attempt to reassign Plaintiff rather than discharging her, along with "the evidence and record as a whole."  [Doc. 26 at 33-34].  As the Court explained above, the admissibility of an EEOC determination letter depends on its probative value, which, in turn, depends on the  other evidence in the case and the quality of the investigation and the conclusions drawn from the investigation.  *See supra* Part IV.D.  Here, where the EEOC letter supplied only the vaguest reasoning for its determination—and indeed, did not supply any rationale whatsoever that would support its determination that Plaintiff's termination resulted from retaliation in violation of Title VII—the Court has no basis upon which to conclude that the EEOC's determination resulted from a thorough investigation, fairly interpreted the evidence, or was reached after the proper application of Eleventh Circuit precedent.  Moreover, Plaintiff does not specify what

29

"chronology of events and . . . disparate actions taken towards the plaintiff when compared to other similarly situated employees" the Court should determine "strongly indicate that the Plaintiff was discriminated against on the basis of sex and retaliation." [*See* Doc. 28 at 3].

For these reasons, the undersigned concludes that Plaintiff has failed to proffer evidence sufficient to overcome Defendant's challenge to the causation element of her *prima facie* case of retaliation under either Title VII or the ADA. The undersigned therefore **RECOMMENDS** that the District Judge **GRANT** Defendant's motion for summary judgment on Plaintiff's claims of retaliatory termination.

## V.    *Conclusion*

For the reasons discussed above, the undersigned **RECOMMENDS** to the District Judge that he **GRANT** Defendant's motion for summary judgment, [Doc. 24], **DISMISS** all of the claims alleged in the complaint, and **DIRECT** the Clerk to close the case.

Because this case presents no other issues referred to Magistrate Judges pursuant to Standing Order 14-01, the Clerk is hereby **DIRECTED** to **TERMINATE** reference to the undersigned.

AO 72A
(Rev.8/8
2)

**IT IS SO RECOMMENDED and DIRECTED,** this the 27th day of October, 2015.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

31