IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MELODIE L. MOSS,

                              Plaintiff,

        v.                                                    1:14-cv-1442-WSD

CITY OF ATLANTA FIRE
DEPARTMENT,

                              Defendant.

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Alan J. Baverman's

Final Report and Recommendation [29] ("R&R"), recommending Defendant City

of Atlanta Fire Department's ("Defendant") Motion for Summary Judgment [24]

be granted.

I.      BACKGROUND

        A.      Facts[1]

        Plaintiff proceeds *pro se* in this matter.  In her complaint [2], Plaintiff states

that she worked as a firefighter for the City of Atlanta Fire Department for fifteen

---

[1]      The facts are taken from the R&R and the record.  The parties have not
objected to any specific facts in the R&R, and the Court finds no plain error in
them.  The Court thus adopts the facts set out in the R&R.  See Garvey v. Vaughn,
993 F.2d 776, 779 n.9 (11th Cir. 1993).

years.  (Compl. at 7).  She alleges that, in 2006, she fractured her foot in an on-the-job accident.  (Id.).  She states that she had surgery and returned to work but suffered from a dislocation and tendinitis in her right foot.  (Id.).  She indicates that she requested a job assignment that would not require prolonged sitting with her foot in a low position and that although such assignments were available, the City denied her requests.  (Id. at 8).  When the request was denied, she filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  (Id. at 7).

Plaintiff indicates that she then underwent a "fitness for duty" examination, and on September 6, 2011, was told to obtain a second "fitness for duty" examination.  (Id. at 7, 15).  She states that, thereafter, on October 11, 2011, she was fired, ostensibly for failure to schedule the second opinion within fourteen days, failure to apply for another position with the City of Atlanta "for which [she] could 'satisfactorily perform the duties of such position,'" and failure to complete the second "fitness for duty" exam within thirty days.  (Id.).

B.    Procedural History

On March 13, 2012, Plaintiff filed with the EOOC a charge alleging discriminatory termination.  (Id. at 10).  Plaintiff claimed that Defendant discriminated against her on the basis of her sex and disability and retaliated

against her for opposing unlawful employment practices in violation of Title VII

and the ADA. (Id.). The particulars of the charge were as follows:

> I began working for the above employer as a Firefighter Recruit on
> December 10, 1998. On August 25, 2010, I filed EEOC Charge
> Number 410-2010-04571 and on May 31, 2011, I filed EEOC Charge
> Number 410-2011-03874. On October 12, 2011, I was discharged.
>
> My termination letter issued by Fire Chief, Kelvin J. Cochran states:
> "due to my inability to perform my duties as a firefighter and my
> failure to comply with the guidelines set forth by the City of Atlanta
> Code of Ordinances" as the reasons for my discharge.
>
> I believe I have been discriminated against because of my sex
> (female) and disability and retaliated against for opposing unlawful
> employment practices in violation of Title VII of the Civil Rights Act
> of 1964, as amended and Title I of the Americans with Disabilities
> Act of 1990, as amended.

(Id.). After conciliation was unsuccessful, on February 19, 2014, the EEOC issued

Plaintiff a notice of right to sue. (Id. at 11-12).

On May 13, 2014, Plaintiff filed this action. ([1]). In her complaint,

Plaintiff raises claims under Title VII of the Civil Rights Act of 1964 ("Title VII")

as amended, 42 U.S.C. 2000e, et seq., and the Americans with Disabilities Act

("ADA"), as amended, 42 U.S.C. § 12101, et seq. Plaintiff alleges that Defendant

discriminated against her on the basis of her race (African American), sex

(female), and disability (mid-foot fracture), and retaliated against her for filing

EEOC charges. (Compl. at 6). She asserts that, as a result of the discrimination,

she was required to work under terms and conditions of employment that differed from similarly-situated employees, and she suffered retaliation, termination of her employment, and failure to accommodate her disability. (Id.). She alleges that other firefighters who have become disabled as a result of on-duty injuries were allowed to take a pension. (Id. at 7). She further contends that male firefighters were not required to obtain second opinions regarding their fitness for duty and were not terminated. (Id.). Plaintiff alleges that, after she filed charges with the EEOC, she was told that the Chief wanted to get rid of her, and she was terminated. (Id.).

Plaintiff demands reinstatement to a position she can perform; no lapse of service; $250,000 in compensatory damages; all accrued salary from October 11, 2011, through the present date; the costs and fees involved in litigating the case; and "[s]uch other relief as m[a]y be appropriate." (Id. at 8).

After the close of discovery, Defendant filed its motion for summary judgment [24]. Plaintiff filed a response [26] on June 2, 2015; Defendant filed a reply [27] on June 16, 2015; and, on June 30, 2015, Plaintiff filed a surreply brief [28]. Plaintiff's surreply raised new evidence and arguments.

On October 27, 2015, the Magistrate Judge issued his R&R. In it, he took into account Plaintiff's surreply, stating that, "in the interest of giving the *pro se*

plaintiff the fullest opportunity to defend her claims in the face of Defendant's motion for summary judgment, the undersigned will consider Plaintiff's surreply." (R&R at at 5 n.4).[2]  The Magistrate recommended summary judgment be granted on Plaintiff's Title VII claims for race discrimination because Plaintiff failed to respond to Defendant's claim that she did not exhaust her administrative remedies prior to bringing suit.  (R&R at 11-12).  He found summary judgment was warranted on Plaintiff's Title VII claims for sex-based disparate treatment because Plaintiff failed to produce enough evidence to allow a reasonable fact finder to conclude that Defendant treated similarly-situated employees more favorably or that Plaintiff was qualified for the position of firefighter.  (Id. at 13-14).  As for Plaintiff's ADA discrimination claims, the Magistrate recommended summary judgment be granted because Plaintiff failed to proffer evidence sufficient to meet the second element of a prima facie case of disability discrimination.  (Id. at 22).  Magistrate Judge Baverman also recommended summary judgment be granted on Plaintiff's retaliation claims.  (Id. at 29).

---

[2]     "Although neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies, the Court may, in its discretion, permit the filing of a surreply when a valid reason exists, 'such as where movant makes new arguments in its reply brief.'"  Branch v. Ottinger, No. 2:10-cv-128-RWS, 2011 WL 4500094, at *1 (N.D. Ga. Sept. 27, 2011) (quoting Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005).

On November 13, 2015, Plaintiff filed her objections to the R&R [31] ("Objections").[3]  Plaintiff objects to the Magistrate Judge's determination that she failed to satisfy the "qualified to do the job" element of a prima facie case of Title VII disparate treatment.  (Obj. at 3-4).  She argues that her proffered comparator, Shedrick Gardner, is a similarly-situated comparator.  (Id. at 4-5).  She also objects to the Magistrate's determination that her Title VII discriminatory retaliation claim fails, arguing that her EEOC complaint was sufficiently close in time to her termination to establish a causal link of retaliation.  (Id. at 5-7).  In her Objections, Plaintiff raises several new arguments and evidence she did not previously present to the Court.  The Court addresses these new arguments and evidence in Section III, *infra*.

On November 30, 2015, Defendant filed its reply to Plaintiff's Objections [32].  Defendant argues that the Objections were not timely filed and the R&R thus should be reviewed for plain error, rather than *de novo*.  (Reply at 2).  Defendant also argues that Plaintiff's Objections "simply restate her arguments from her response to Defendant's Motion for Summary Judgment, and offer new evidence

---

[3]     The Objections were filed on Friday, November 13, 2015.  (See Obj. at 1). The Objections were docketed the following Monday, November 16, 2015.

that was not part of the record considered by the Magistrate Judge in issuing the

R&R."  (Id. at 2-3).

## II.    LEGAL STANDARDS

### A.    Standard of Review on a Report and Recommendation

After conducting a careful and complete review of the findings and

recommendations, a district judge may accept, reject, or modify a magistrate

judge's report and recommendation.  28 U.S.C. § 636(b)(1);

Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S.

1112 (1983).  A district judge "shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which

objection is made."  28 U.S.C. § 636(b)(1).  This requires that the district judge

"give fresh consideration to those issues to which specific objection has been made

by a party."  Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir.

1990) (internal citations omitted).  With respect to those findings and

recommendations to which objections have not been asserted, the Court must

conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093,

1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

Federal Rule of Civil Procedure 72(b)(2) requires:  "Within 14 days after

being served with a copy of the recommended disposition, a party may serve and

file specific written objections to the proposed findings and recommendations."
Federal Rule of Civil Procedure 6(d) provides that, when a party effectuates
service by mail, "3 days are added after the period would otherwise expire . . . ."

The R&R was issued on October 27, 2015, and the response was due
fourteen days later, on November 10, 2015.  Plaintiff effectuated service by mail,
(see Obj. at 25), and therefore Federal Rule of Civil Procedure 6(d) requires a
three-day extension of this fourteen-day deadline.  Plaintiff's Objections, filed
November 13, 2015, are timely.  See Hoewischer v. Cedar bend Club, Inc., 877 F.
Supp. 2d 1212, 1216 (M.D. Fla. 2012) (applying Fed. R. Civ. P. 72(b)(2) and 6(d)
to extend the fourteen-day deadline by three days).  The Court thus conducts its de
novo review with respect to those portions of the R&R to which specific objections
have been made.  Jeffrey, 896 F.2d at 512.  Accordingly, the Court conducts its de
novo review as to whether Plaintiff was "qualified to do the job," whether Shedrick
Gardner is a similarly-situated comparator, and whether Plaintiff has established a
causal link for her retaliation claims.[4]  The Court reviews the remainder of the
R&R for plain error.  Slay, 714 F.2d at 1095.

---

[4]     The Court declines Defendant's invitation to ignore Plaintiff's new
arguments and evidence in her Objections.  "[A] district court has discretion to
decline to consider a party's argument when that argument was not first presented
to the magistrate judge."  Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir.

8

B.    Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment.  Id.

---

2009).  The Court, in its discretion and in the interests of justice, considers the entire record.

"[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotations and brackets omitted).

## III.   ANALYSIS

### A.   Legal Framework

#### 1.   *Title VII Framework*

Plaintiff alleges that Defendant terminated her employment based on her race and gender, in violation of Title VII. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her]

compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin."  42 U.S.C.

§ 2000e-2(a)(1).  Title VII also makes it unlawful for an employer to retaliate

against an employee for her participation in certain statutorily-protected activities:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Claims of discrimination relying on circumstantial evidence are evaluated

using the familiar burden-shifting framework articulated in McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973).  Maddox-Jones v. Bd. of Regents of Univ.

Sys. of Ga., 448 F. App'x 17, 19 (11th Cir. 2011) (per curiam).  Under the

McDonnell Douglas evidentiary framework, a plaintiff establishes a prima facie

case of disparate treatment by showing that (1) she is a member of a protected

class; (2) she was qualified for the job; (3) she suffered an adverse employment

action; and (4) her employer treated, more favorably, similarly situated employees

outside the protected class.  Id. at 20.

The second step of the McDonnell Douglas analysis requires Defendant to

rebut Plaintiff's *prima face* case by producing a legitimate, nondiscriminatory

reason for the alleged disparate treatment.  This burden is "exceedingly light."
Turnes v. AmSouth Bank, NA, 36 F.3d 1057, 1061 (11th Cir. 1994).  Where a
prima facie case is rebutted, Plaintiff has the opportunity to show that Defendant's
stated reasons are pretexts for discrimination.  Kragor v. Takeda Pharm. Am., Inc.,
702 F.3d 1304, 1308 (11th Cir. 2012).  Plaintiff must show "such weaknesses,
implausibilities, inconsistencies, or contradictions in the employer's proffered
legitimate reasons for its action that a reasonable factfinder could find them
unworthy of credence."  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th
Cir. 1997) (internal quotations omitted).

Despite this burden-shifting framework, the "ultimate burden of persuading
the trier of fact that the defendant intentionally discriminated against the plaintiff
remains at all times with the plaintiff."  Wilson v. B/E Aerospace, Inc., 376 F.3d
1079, 1088 (11th Cir. 2004) (internal quotations omitted).

2.    *ADA Framework*

The ADA prohibits covered entities from discriminating "against a qualified
individual on the basis of disability in regard to job application procedures, the
hiring, advancement, or discharge of employees, employee compensation, job
training, and other terms, conditions, and privileges of employment."  42 U.S.C.
§ 12112(a).  "[T]here are two distinct categories of disability discrimination claims

12

under the ADA:  (1) failure to accommodate and (2) disparate treatment."

E.E.O.C. v. Eckerd Corp., No. 1:10-cv-2816-JEC, 2012 WL 2726766, at *4 (N.D.

Ga. July 9, 2012) (citing Basith v. Cook Cty., 241 F.3d 919, 927 (7th Cir. 2001)).

Retaliation against a person claiming a right under the ADA or opposing a practice

made unlawful by the ADA also is prohibited.  42 U.S.C. § 12203.  "The

burden-shifting analysis of Title VII employment discrimination claims is

applicable to ADA claims."  Holly v. Clairson Indus., L.L.C., 492 F.3d 1247,

1255-56 (11th Cir. 2007).

     B.    Title VII Claims for Race Discrimination

     In its brief in support of its motion for summary judgment, Defendant argues

that Plaintiff cannot pursue a claim for racial discrimination because she did not

exhaust her administrative remedies prior to bringing suit.  ([24] at 4-5).  The

Magistrate Judge deemed Plaintiff's Title VII race discrimination claims

abandoned because Plaintiff did not respond to Defendant's exhaustion argument,

and because Plaintiff's surreply brief suggests she did not intend to bring a race

discrimination claim.  (R&R at 12).  The Court finds no plain error in the

Magistrate Judge's findings and recommendation, and Defendant's motion for

summary judgment is granted on Plaintiff's Title VII claims for race-based discrimination.[5]

C.      Title VII Claims for Sex-Based Disparate Treatment

Defendant seeks summary judgment on Plaintiff's claims of sex-based disparate treatment on the ground that she cannot show evidence to support each element of a prima facie case. To state a disparate treatment claim under Title VII based on circumstantial evidence, a plaintiff first must establish a prima facie case by showing that "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her class more favorably; and (4) she was qualified to do the job." Brown v. Jacobs Eng'g, Inc., 572 F. App'x 750, 751-52 (11th Cir. 2014) (per curiam) (citing Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)).

Plaintiff argues that she established the "qualified to do the job" element of a prima facie case. In response to Defendant's summary judgment motion, Plaintiff submitted documents indicating that in 2000, she was certified to work as a firefighter; in 2010, she attended required continuing-education classes; and that

---

[5]     The Magistrate also determined that Plaintiff did, in fact, fail to exhaust her administrative remedies on these claims prior to filing suit. The Court finds no plain error in the Magistrate Judge's findings. Summary judgment is warranted on Plaintiff's Title VII claims for race-based discrimination for this reason as well. See Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004).

she is licensed as an Emergency Medical Technician through 2016.  (Resp. at 25-32).  She showed that, in 2011 and 2012, physicians opined that she had trouble standing and walking and therefore was unable to return to her work as a firefighter or otherwise perform field duty.  (Id. at 10-12).  The Magistrate Judge noted that, "while Plaintiff indicates that she had been transferred to an office assistant position and thus may have established a presumption that she was capable of performing in that capacity, she also indicates that she required a position 'not requiring prolonged sitting with foot in low position.'"  (R&R at 16 (citations omitted)).  The Magistrate concluded that the evidence showed Plaintiff was not only incapable of working in the field but also was unable to work at a desk job.

In her Objections, Plaintiff argues that her request for a position not requiring prolonged sitting was made in February 2010, "in compliance with a physician's report received on February 1, 2010."  (Obj. at 3).  She argues that "[a] subsequent physician's report on March 3, 2010 required no such restriction." (Id.).  She includes in the Objections a February 6, 2010, memorandum from her to Interim Fire Chief Joel G. Baker in which she states she "cannot sit any longer than ten minutes," and "[i]t is imperative that [I] get up and walk to relieve the pressure on my foot."  (Id. at 8).  She also includes her February 2010 and March 2010

physician reports, as well as positive evaluations during her time as an office assistant.

Plaintiff's new evidence and arguments, raised for first time in her Objections, do not discredit the recommendation that summary judgment be granted on Plaintiff's sex discrimination claim. First, although it is difficult to make out, the February 2010 physician report does not appear to support Plaintiff's original position that she "cannot sit any longer than ten minutes." Rather it appears to show she had limited ability to stand and walk. (Obj. at 9). The March 2010 report does not support Plaintiff's new argument that she was cleared to sit for prolonged periods. It appears to show that "patient is cleared to stand and walk," with the limitation that she is not cleared for "field work." (Id. at 10). Thus, the evidence appears not to contradict Plaintiff's self-professed inability to sit for prolonged periods of time.

Second, even if the new evidence showed that Plaintiff was cleared to sit for prolonged periods, Plaintiff's new litigation position contradicts the allegations in her Complaint, her EEOC complaint, and the arguments she raised in response to Defendant's summary judgment motion. Plaintiff's consistent position has been that, in February 2010, she requested a job assignment not requiring prolonged sitting, and after that request was not granted she filed an EEOC complaint in

August 2010.  (Compl. at 7, 10).  Because the new evidence does not support

Plaintiff's argument that she was capable of performing a desk job, and because

Plaintiff's new position contradicts the allegations in her Complaint, her EEOC

complaint, and the arguments she raised in response to Defendant's summary

judgment motion, the Court finds that Plaintiff fails to meet the fourth element of a

prima facie case of sex-based discrimination.[6]

Even if Plaintiff could meet the fourth element of a prima facie case,

Plaintiff has failed to meet the third element by showing her employer treated

similarly-situated employees outside her class more favorably.  Plaintiff argues that

Shedrick Gardner, a male employee, is a similarly-situated comparator.  The

Eleventh Circuit has held that employees "must be similarly situated in all relevant

respects."  Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1204 (11th Cir. 2007)

(emphasis and internal quotation marks omitted).  "The comparator must be nearly

identical to the plaintiff to prevent courts from second-guessing a reasonable

decision by the employer."  Wilson, 376 F.3d at 1091.  "The burden of identifying

similarly situated individuals is a heavy one."  Hicks v. Jackson Cty. Comm'n, 374

---

[6]     Plaintiff's argument that "it is unlikely there were NO available positions for
which she could qualify" fails.  (Obj. at 4).  Plaintiff carries the initial burden of
establishing a prima facie case of discrimination, McDonnell Douglas, 411 U.S. at
802, and thus carries the burden to show she was qualified for a position.  Plaintiff
fails to meet this burden.

F. Supp. 2d 1084, 1096 (N.D. Ala. 2005).  If the plaintiff fails to show the existence of a similarly-situated employee and there is no other plausible allegation of discrimination, judgment as a matter of law is appropriate.  Arafat v. Sch. Bd. of Broward Cty., 549 F. App'x 872, 874 (11th Cir. 2013) (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam)).

Plaintiff argues that she and Gardner are similarly situated because they were both employed by Defendant "during a similar time period," both incurred a debilitating injury while on duty, both failed a required physical fitness-for-duty test, neither disputed the findings of the physical-fitness test, and both requested the same accommodations.  Plaintiff argues that, while Gardner was permitted to stay on in an alternative position, Plaintiff was terminated from her alternative position and was replaced approximately a week later.  (Resp. at 21-22; Surreply at 1-2).

The Magistrate Judge determined that Plaintiff failed to show that Gardner was a similarly-situated comparator whose treatment might give rise to an inference that Plaintiff suffered gender discrimination.  (R&R at 17).  The Magistrate Judge noted that "Plaintiff glosses over key differences between her situation and Mr. Gardner's."  (Id. at 18).  He noted that the employment decisions Plaintiff seeks to compare took place years apart.  In addition, there is no

indication the injuries Plaintiff and Gardner suffered were similar, that the two possessed similar experience and skills, or shared a supervisor, or that the same decisionmaker made the decisions both to transfer Mr. Gardner and to terminate Plaintiff.  The Magistrate concluded that, "given the fact that Mr. Gardner's transfer and Plaintiff's termination occurred approximately four years apart . . . there [is no] reason to believe that Plaintiff and Mr. Gardner were similarly situated in all relevant respects and therefore are proper comparators." (Id. at 19).

Plaintiff argues that the Magistrate Judge erred in basing his determination, in part, on his observation that Plaintiff did not show that she and Gardner had similar injuries or the same supervisors.  She argues that the specific type of injury is immaterial, and the proper focus should be on Plaintiff's claim that both she and Gardner failed the physical fitness-for-duty exam.  The Court disagrees.  The type of injury here is relevant to the extent it affects fitness for other positions.  In this case, Gardner received an evaluation in 2007 that found him incapable of performing as a firefighter, but capable of working as a fire inspector, and he was reassigned from a firefighter position to an inspector position the next month. ([26.1] at 6-8).  As discussed above, Plaintiff does not offer any evidence that she was fit for any sort of duty—either a desk job or a field position.

19

Plaintiff next argues and, for the first time, presents evidence that she and Gardner had the same upper-management decisionmakers, Fire Chief Kelvin Cochran and Chief Wilmond Meadows.  (Obj. at 5).[7]  The existence of a common decisionmaker is a factor a court considers in determining whether a plaintiff and a comparator were similarly situated.  See Silvera v. Orange Cty. Sch. Bd., 244 F.3d 1253, 1261 n.5 (11th Cir. 2001) (recognizing that "differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination").  This factor, however, is not dispositive.[8]  Even assuming Plaintiff established that she and Gardner shared a common decisionmaker, Plaintiff fails to address critical differences between her and Gardner, and thus fails to show the two were "similarly situated in all relevant respects."  Griffin Indus., 496 F.3d at 1204.

_____

[7]      She also argues she and Gardner "shared the same workers compensation administrator that investigated their injury claims—Michele Walker." (Id.).

[8]      Plaintiff cites to Coleman v. Donahoe, 667 F.3d 835 (7th Cir. 2012), in support of her argument that sharing upper-level decisionmakers and investigators supports a finding that she and Gardner were similarly situated.  At the outset, the Court notes Coleman is not binding authority.  In Coleman, the Seventh Circuit based its decision only in part on the fact that the plaintiff and comparators had the same supervisor.  The court based its decision also on its determination that the plaintiff and comparators were subject to the same standards of conduct, and the seriousness of their violations was comparable.  As discussed below, there are critical differences between Plaintiff and Gardner that distinguish this case from Coleman.

As discussed, Plaintiff has not shown she was fit for any sort of duty. Gardner, on the other hand, received an evaluation showing he was capable of working as a fire inspector.  This difference alone is critical enough to warrant the Court's determination that Gardner is not similarly situated to Plaintiff.  Plaintiff, however, also fails to show that she and Gardner possessed similar experience or skills.  And, as the Magistrate Judge noted, the fact that Gardner's transfer and Plaintiff's termination took place years apart weighs against a finding the two were similarly situated.  Plaintiff simply has not shown that she and Gardner were sufficiently similarly situated to permit a reasonable inference of discrimination. Plaintiff thus fails to meet her burden to show a prima facie case of discrimination, and summary judgment is granted on Plaintiff's Title VII claims for sex-based disparate treatment.[9]

### D.    ADA Discrimination Claims

Defendant next seeks summary judgment on Plaintiff's claims that it discriminated against her in violation of the ADA because she cannot show

---

[9]     Even if Plaintiff met her burden to show a prima facie case of discrimination, summary judgment would be warranted because Plaintiff has not proffered sufficient evidence to rebut Defendant's legitimate, nondiscriminatory reasons for terminating her.  Plaintiff has not shown "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  Combs, 106 F.3d at 1528.

evidence to support each element of a prima facie case of disability discrimination. "In order to establish a prima facie case of discrimination under the ADA, the plaintiff must show that: (1) [s]he is disabled; (2) [s]he was a 'qualified individual' at the relevant time, meaning that [s]he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) [s]he was discriminated against because of h[er] disability." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001). "The ADA defines a 'qualified individual' as an individual with a disability 'who, with or without reasonable accommodation, can perform the essential functions' of her job." Morales v. Ga. Dep't of Human Res., 446 F. App'x 179, 182 (11th Cir. 2011) (per curiam) (quoting 42 U.S.C. § 12111(8)).

The Magistrate Judge found that Plaintiff failed to offer evidence sufficient to meet the second element of a prima facie case of disability discrimination: to enable a reasonable fact finder to determine that she was capable of working as a firefighter or an office assistant with or without accommodation. (R&R at 22). Plaintiff does not object to these findings or recommendation, and the Court finds no plain error in it.

The Magistrate Judge also determined that Plaintiff failed to overcome Defendant's argument that she cannot show that Defendant discriminated against

her because of her disability.  (R&R at 23).  The only evidence Plaintiff proffered

to support that Defendant discriminated against her because of her disability is a

letter of determination issued by the EEOC on or about April 11, 2013.  (Resp. at

33-34).  The  Magistrate Judge found the letter insufficient to raise a genuine issue

of material fact as to whether Defendant discriminated against Plaintiff because of

her disability.  (R&R at 24).  The Court finds no plain error in these findings or

recommendation.  See Kincaid v. Bd. of Trs., 188 F. App'x 810, 817 (11th Cir.

2006) (per curiam) (holding that a district court is "not required to defer or make

reference to the EEOC determination" in its opinion deciding summary judgment

and therefore is not required to find that the determination creates an issue of

material fact (citing Moore v. Devine, 767 F.2d 1541, 1549-51 (11th Cir. 1985))).

Accordingly, summary judgment is granted on Plaintiff's ADA discrimination

claims.

>        E.     Retaliation Claims

Defendant next seeks summary judgment on Plaintiff's claims of

discriminatory retaliation, arguing Plaintiff cannot establish the causation element

of a prima facie case of retaliation.  To establish a prima facie case of retaliation, a

plaintiff must show that:  (1) she engaged in statutorily-protected activity; (2) she

suffered a materially adverse action; and (3) there was a causal link between the

two. Dixon v. The Hallmark Cos., Inc., 627 F.3d 849, 856 (11th Cir. 2010). [10] To show causation, Plaintiff is required to show that the "protected activity and the adverse action were not wholly unrelated." Shotz v. City of Plantation, 344 F.3d 1161, 1190 n.30 (11th Cir. 2003). "[A] plaintiff's burden to prove causation can be met by showing a close temporal proximity between the statutorily protected activity and adverse-employment action." Ward v. United Parcel Serv., 580 F. App'x 735, 739 (11th Cir. 2014) (citing Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)). In the absence of close temporal proximity, a plaintiff must "offer additional evidence to demonstrate a causal connection, such as a pattern of antagonism or that the adverse action was the first opportunity for the employer to retaliate." Id.

Plaintiff argued that the determination letter the EEOC issued in response to Plaintiff's 2011 charge of discrimination in combination with "[t]he chronology of events and the disparate actions taken towards the plaintiff when compared to other similarly-situated employees strongly indicate[s] that the Plaintiff was discriminated against on the basis of sex and retaliation." (Surreply at 3).

---

[10]    It is undisputed that Plaintiff meets the first two elements of a prima facie retaliation case.

24

The Magistrate concluded that, because Plaintiff filed her last pre-termination EEOC charge on May 31, 2011, and her employment was terminated nearly five months later on October 22, 2011, Plaintiff cannot rely on proximity alone to establish a reasonable presumption of causation.  The Court agrees.  See Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) (three months between protected activity and adverse employment action was too temporally attenuated to create jury issue on causation).  The Magistrate also found that the EEOC determination letter was insufficient to serve as "other evidence of causation," because the letter "supplied only the vaguest reasoning for its determination—and indeed, did not supply any rationale whatsoever that would support its determination that Plaintiff's termination resulted from retaliation in violation of Title VII . . . ." (R&R at 29).  Because Plaintiff did not present any other evidence of causation, the Magistrate Judge recommended summary judgment be granted on Defendant's motion for summary judgment on Plaintiff's retaliation claims.

In her Objections, Plaintiff raises new arguments and offers new evidence that her managers began verbally harassing her shortly after she filed her final pre-termination EEOC complaint on May 31, 2011.  She claims Chief Meadows stated "You're a disgrace," and Chief Joel Baker said "We're going to get rid of you," among other unspecified hostile behavior.  (Obj. at 6).  She states that this

hostile behavior was noticed by another female employee, Jovonia Bellamy.  (Id.).

Plaintiff attaches to her Objections an affidavit purportedly provided by Ms.

Bellamy.

In her affidavit, Ms. Bellamy states that, in 2010 and 2011, she worked both

in Defendant's training department and as an HR liaison to the Workers

Compensation Board.  (See id. at 23).  In the training department, she was

responsible for verifying that firefighters completed at least 40 hours of training to

be recertified.  (Id.).  She states that, around September 2010, Chief Simmons

approached her and asked "why was [Plaintiff] certified? . . . We didn't want her

certified because she has been stirring up trouble."  (Id.).  She states that when

Plaintiff had appointments with HR, "she would be questioned and harassed about

her time about clocking out when no one else had the same restrictions/questions."

(Id.).  Upon learning in an HR class about ADA accommodation rules, she asked

"three other ladies from the HR office . . . [whether Plaintiff] will be offered

another job," and the response was "No, Ms. Moss has filed too many complaints

they are trying to get rid of her."  (Id. at 23-24).  Plaintiff claims that when Ms.

Bellamy "refused to facilitate the attempts to revoke the Plaintiff's firefighter

certification, she too was fired."  (Id. at 6).  Plaintiff also claims that, on July 19,

2011, she discovered that her firefighter status had been changed to uncertified. (<u>Id.</u> at 5-6).

The Court first evaluates if it will consider the arguments and evidence first offered by Plaintiff in her Objections.  This evidence and these arguments appear to have been available to Plaintiff for some time.  For whatever reason, she chose not to raise it, including for consideration by the Magistrate Judge.  The process of allowing a Magistrate Judge to first consider motions and the evidence relevant to them is corrupted when a litigant saves until after the R&R is issued to offer and rely on evidence not presented previously.  That is the case here.  The Court will benefit from the Magistrate Judge's consideration and recommendation whether to consider the "new evidence" Plaintiff now offers and, if it should, what impact, if any, it has on the analysis.

Accordingly, the Court resubmits the issue of the viability of Plaintiff's retaliation claim for the Magistrate Judge's consideration.  In doing so, the Court denies without prejudice Defendant's motion for summary judgment on Plaintiff's retaliation claims.  Defendant is entitled to file, on or before January 29, 2016, a renewed summary judgment motion on Plaintiff's remaining claim for retaliation. Plaintiff's response is due February 26, 2016.  Defendant's reply is due March 8, 2016.  No surreply shall be filed.  The summary judgment motion and response

27

shall be limited to ten (10) pages each (excluding exhibits), and shall be limited to the issue of Plaintiff's remaining retaliation claim.  The reply shall be limited to six (6) pages.  Plaintiff is admonished that her response must contain a complete statement of the evidence and arguments in support of her position.  Plaintiff may not present any new evidence or arguments.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Alan J. Baverman's Final Report and Recommendation [29] is **ADOPTED AS MODIFIED**.

**IT IS FURTHER ORDERED** that Plaintiff Melodie L. Moss's Objections to the R&R [31] are **SUSTAINED IN PART** and **OVERRULED IN PART**.

**IT IS FURTHER ORDERED** that Defendant City of Atlanta Fire Department's Motion for Summary Judgment [24] is **GRANTED** on Plaintiff's Title VII race discrimination claims, Title VII sex-based disparate treatment claims, and ADA discrimination claims.

**IT IS FURTHER ORDERED** that Defendant City of Atlanta Fire Department's Motion for Summary Judgment [24] is **DENIED WITHOUT PREJUDICE** on Plaintiff's Title VII retaliation claim.  Defendant is entitled to file, on or before January 29, 2016, a renewed summary judgment motion on

Plaintiff's remaining claim for retaliation.  Plaintiff's response is due February 26, 2016.  Defendant's reply is due March 8, 2016.  No surreply shall be filed.  The summary judgment motion and response shall be limited to ten (10) pages each (excluding exhibits), and shall be limited to the issue of Plaintiff's remaining retaliation claim.  The reply shall be limited to six (6) pages.  Plaintiff is admonished that her response must contain a complete statement of the evidence and arguments in support of her position.  Plaintiff may not present any new evidence or arguments.


**SO ORDERED** this 23rd day of December, 2015.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE